Filed 2/1/16  Pellitteri v. Wellquest CA2.2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| MARCIA PELLITTERI,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WELLQUEST INTERNATIONAL, INC., et al.,<br><br>    Defendants and Appellants. | B264094<br><br>(Los Angeles County<br>Super. Ct. No. BC490541) |


APPEAL from an order of the Superior Court of Los Angeles County. Mark V. Mooney, Judge.  Affirmed.


Quinn Emanuel Urquhart & Sullivan, Steven G. Madison, Prashanth Chennakesavan for Defendants and Appellants.


Krane & Smith, Jeremy D. Smith, Daniel L. Reback for Plaintiff and Respondent.

_____

Appellants contend that the trial court abused its discretion by staying arbitration of arbitrable claims while nonarbitrable claims are litigated. We find there was ample basis for the trial court to determine that litigation should proceed prior to arbitration. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Marcia Pellitteri filed this action in August 2012. Her first amended complaint (FAC), filed in August 2013, names as defendants Wellquest International, Inc. (WQ), Edward Mishan, Michael Ackerman, Knott Direct, Inc., Emson, Inc., and E. Mishan & Sons, Inc. Pellitteri alleges that all defendants are interrelated, and that each is the agent, principal, alter ego, and/or representative of the other. She further alleges she is a successor in interest to and assignee of Progressive Consulting Services, Inc. (PCS).

According to the FAC, Pellitteri is in the business of developing new products and advertising the products by, among other methods, television infomercials. In 2002, Pellitteri agreed with Mishan and Ackerman to introduce third parties who developed various products so that Mishan and Ackerman could produce, package, and market the products. Mishan and Ackerman and affiliated entities were to pay Pellitteri and her affiliated entities royalties based on sales of the products. Along those lines, PCS entered into a written agreement with WQ in September 2002, whereby WQ would pay PCS royalties based on sales of third parties' products.

The FAC alleges that from 2002 to 2011 Pellitteri and/or PCS received compensation from defendants. In 2011, however, Pellitteri discovered that defendants breached their obligations by failing to pay royalties, by misrepresenting sales of products, by entering into undisclosed arrangements with third parties to circumvent the agreements between plaintiff and defendants, and by misappropriating plaintiff's intellectual property and product designs. The FAC contains a total of 11 causes of action against defendants relating to this alleged misconduct.

Following service of the FAC, defendants moved to compel arbitration and stay the litigation, contending that arbitration was mandated by the written agreement between

2

WQ and PCS. Pellitteri opposed the motion, arguing that the arbitration clause was narrow and did not apply to any of the FAC's claims. The trial court denied defendants' motion in February 2014, finding that the arbitration provision applied only to claims relating to an "Audit Clause" in the agreement, and because Pellitteri had not exercised her rights under the Audit Clause, none of her claims were subject to arbitration.[1]

Defendants appealed the denial of the motion to compel arbitration. In an unpublished opinion, *Marcia Pellitteri v. Wellquest International, Inc., et al.*, case No. B255062 (filed January 29, 2015), we found that certain claims were related to the Audit Clause, and therefore were arbitrable. These matters were defendants' alleged failure to pay royalties or other required compensation to Pellitteri, and their alleged failure to provide accurate reporting and accounting of profits and sales. Other disputes, however,

---

[1] Paragraph 9 of the agreement was labeled "Audit Rights" and provided: "PCS shall have the right to designate a certified public accountant(s), to audit WQ's records for The Product and Additional Products, no more than twice per calendar year . . . to ascertain the accuracy of each royalty compensation report. If the auditor discovers a discrepancy between the amount of royalties/compensation reported and WQ's records, the auditor shall promptly notify both PCS and WQ of the perceived discrepancy together with a detailing of the asserted discrepancy. . . . Should the auditor find a discrepancy and WQ disputes the discrepancy, WQ and/or WQ's designated accountant shall at it's [*sic*] own cost provide PCS's auditor within five (5) business days of discovery of the discrepancy with a breakdown as to why the discrepancy is not accurate. At that point WQ and/or WQ's accountant and PCS's auditor shall either agree or disagree. If they agree WQ shall pay the discrepancy upon the parties agreeing to such and if WQ and/or PCS does not agree, the parties shall use an arbitrator as outlined in Paragraph 26 of this Agreement to arbitrate only for this purpose and to resolve the matter between them."

Paragraph 26, which was labeled "Arbitration," stated: "Any controversy or claim arising out of or relating to the Audit Clause of this agreement, or the breach thereof, shall be settled by arbitration . . . and judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction thereof. The arbitration shall be conducted in Los Angeles, California by a single, neutral, impartial arbitrator, independent of the parties, who shall be an accountant . . . . The Arbitrator shall have no power to alter or modify any express provision of this Agreement, or to make any award which by the terms effects any such alteration or modification. Nothing herein contained shall prevent any party from seeking injunctive or other equitable relief from a court of competent jurisdiction."

were not related to the Audit Clause and not subject to arbitration—allegations that defendants entered into secret third party arrangements to avoid their obligations, misappropriated plaintiff's intellectual property and product designs, and used third parties as shell companies to circumvent the agreement. In remanding the matter to the trial court, we instructed: "The trial court is to enter an order compelling arbitration and staying court proceedings on all matters other than claims that defendants (i) entered into secret third party arrangements to avoid their obligations, (ii) misappropriated plaintiff's intellectual property and product designs, and (iii) used third parties as shells to circumvent the agreement. The trial court may decide whether the arbitration order should be delayed pursuant to Code of Civil Procedure section 1281.2, subdivision (c), or, upon any motion brought pursuant to Code of Civil Procedure section 1281.4, the trial court may stay litigation of the nonarbitrable claims pending arbitration. Alternatively, the trial court may order that arbitration proceed simultaneously with litigation of the nonarbitrable claims."

Following remand, Pellitteri filed a motion to stay arbitration pending litigation of the nonarbitrable claims pursuant to Code of Civil Procedure section 1281.2, subdivision (c).[2] The same day, defendants filed a motion to stay litigation pending arbitration pursuant to section 1281.4. The trial court granted Pellitteri's motion and denied defendants', allowing litigation to proceed before arbitration.

Defendants appealed.

## DISCUSSION

### I. The order is appealable

Section 1294, subdivision (a), provides for appeal from an order denying a petition to compel arbitration. It does not expressly allow an appeal from an order staying arbitration. Case law, however, has read into section 1294 a right to appeal from such an order. (*Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 98 (*Henry*); *The*

---

[2]   Unless otherwise noted, all further statutory references are to the Code of Civil Procedure.

4

*Energy Group, Inc. v. Liddington* (1987) 192 Cal.App.3d 1520, 1528-1529; *MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 653-655.) This is because an order staying arbitration is the "functional equivalent" of an order denying arbitration. (*Henry*, at p. 99.) A party to a valid arbitration agreement has a right to have its dispute resolved quickly and inexpensively, and an order staying arbitration can frustrate this goal, just like an order refusing to compel arbitration. (*Id.* at pp. 99-100.)

Pellitteri argues that no appeal lies from the trial court's order here because defendants already appealed the denial of their prior motion to compel arbitration. We disagree. First, defendants are not appealing the same issue. In the prior appeal, defendants' request to compel arbitration had been denied entirely. Now, arbitration may occur, just not in the sequence that defendants prefer. Second, the concerns expressed in *Henry* and similar authority apply. Generally, a party entering into an arbitration agreement can expect that any dispute subject to the agreement will be resolved efficiently and relatively inexpensively through arbitration. The trial court's order (if it was incorrect) would potentially thwart this expectation. Appeal from the order delaying arbitration is therefore proper.

## II. <u>The trial court did not abuse its discretion</u>

The third paragraph of section 1281.2, subdivision (c), provides: "If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies." Pursuant to this provision, a trial court may order that litigation of nonarbitrable claims be completed prior to commencement of arbitration, but only if determination of the nonarbitrable claims might make arbitration unnecessary. (*Ibid.*; *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1521 (*RN Solution*).)

Defendants contend the trial court erred by staying arbitration. According to defendants, Pellitteri's arbitrable claims—that defendants failed to pay royalties and provide accurate accountings—will need to be arbitrated regardless of the outcome of the litigation, so litigation will not make arbitration unnecessary.

We review the trial court's order granting the motion to stay arbitration for an abuse of discretion. (*Henry*, *supra*, 233 Cal.App.3d 94, 101.) "Thus, the trial court's order will not be disturbed on appeal unless it exceeds the bounds of reason." (*Ibid.*)

We find that the trial court did not abuse its discretion. In providing for a delay of arbitration, the third paragraph of section 1281.2, subdivision (c), does not require a conclusive finding that arbitration will be rendered unnecessary by litigation. Instead, in ordering a stay of arbitration, the trial court need only find that determination of nonarbitrable issues "may" make arbitration unnecessary. (*Ibid.*; see also *RN Solution*, *supra*, 165 Cal.App.4th 1511, 1521.) The trial court had a reasonable basis to make such a finding here. Each of Pellitteri's causes of action incorporates and is based on allegations that must be litigated—that defendants entered into secret third party arrangements to avoid their obligations, misappropriated Pellitteri's intellectual property and product designs, and used third parties as shells to circumvent the agreement. It is entirely possible that Pellitteri will be unable to prove any of these claims, and that the evidence (or lack of evidence) relevant to these allegations will demonstrate that Pellitteri has no viable claims—arbitrable or not—against defendants. The trial court, therefore, did not abuse its discretion in granting Pellitteri's motion to stay arbitration.

Moreover, the limited scope of the arbitration provision provides further justification for the trial court's decision. The only matters subject to arbitration are defendants' alleged failures to pay royalties or other required compensation and to provide accurate reporting and accounting of profits and sales. According to the agreement, these are matters for the parties' respective accountants to determine, and any dispute is to be resolved by an accountant arbitrator.

*Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082 (*Doan*) examined a similarly narrow arbitration requirement, one involving the appraisal process

described in Insurance Code section 2071.  The limited function of the appraiser arbitrator was to determine an amount of damage, not to resolve questions of coverage or policy interpretation.  (*Doan*, at p. 1094.)  The appellate court found that, under section 1281.2, subdivision (c), the trial court had discretion to stay the appraisal proceeding pending resolution of legal issues.  (*Id.* at p. 1099.)  Allowing litigation to proceed first would provide the advantages of informing the appraisal process and promoting judicial economy.  (*Id.* at pp. 1103-1104; see also *Alexander v. Farmers Ins. Co., Inc.* (2013) 219 Cal.App.4th 1183, 1196 [following *Doan* in finding that a judicial determination could inform the appraisal process and aid judicial efficiency].)

At least one of these benefits is likely to accrue here.  As explained above, if Pellitteri's claims are found unmeritorious in litigation, a subsequent arbitration may not be necessary.  If arbitration were held first, however, litigation would almost certainly be required since the accountant arbitrator would have no authority to adjudicate the nonarbitrable claims.  And a subsequent, second arbitration might then be necessary to determine royalties or compensation owed on the nonarbitrable claims.  Thus, the trial court's order promotes judicial economy.  Furthermore, under the trial court's order, litigation is likely to inform the arbitration (if it is necessary) because it will draw the lines of royalties and compensation to be calculated.  For example, if Pellitteri proves that defendants misappropriated intellectual property but does not prove any of her other claims, then the arbitrator's scope of determination will be comparatively narrow.

Therefore, the trial court did not err in granting Pellitteri's motion to stay arbitration pending litigation.  It follows that the court properly denied defendants' motion to stay litigation.

## DISPOSITION

The trial court's order staying arbitration of arbitrable claims and denying a stay of litigation of nonarbitrable claims is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.